UNITED STATES of America,
Plaintiff–Appellee,

v.

Joel CRETACCI, Defendant–Appellant.

No. 94–10235.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 1995.

Decided Aug. 4, 1995.

---

Thomas Hoidal, Asst. Federal Public Defender, Phoenix, AZ, for defendant-appellant.

Stanley L. Patchell, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: REINHARDT, D.R. THOMPSON, and KLEINFELD, Circuit Judges.

Opinion by Judge REINHARDT; concurrence by Judge KLEINFELD.

REINHARDT, Circuit Judge:

We have recently held that some civil forfeitures constitute "punishment" for purposes of the Double Jeopardy Clause. *See United*

*States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), *amended on denial of reh'g,* 56 F.3d 41 (1995). This appeal requires us to determine a related question: whether the administrative forfeiture of unclaimed property constitutes "punishment"? We hold that it does not, and thus that a criminal prosecution following an administrative forfeiture of such property does not offend the Double Jeopardy Clause.[1]

## I.

On October 4, 1993, a federal magistrate issued a criminal arrest warrant against Joel Cretacci, which stemmed from his alleged participation in two Arizona ATM robberies that netted more than $200,000. That same day, the magistrate issued a civil seizure warrant for a Toyota MR–2 pursuant to 18 U.S.C. § 981(a)(1)(A). An affidavit by an agent for the Federal Bureau of Investigation (FBI) accompanying the seizure warrant alleged that the car was subject to forfeiture because Cretacci had purchased it with funds from the two robberies in violation of the federal money laundering statutes, 18 U.S.C. §§ 1956 and 1957.

In a letter dated October 27, 1993, the government informed Cretacci of the pending administrative forfeiture action [and explained that he could contest it and obtain a court hearing or he could petition the FBI for a pardon of the forfeited property]. The letter stated that if Cretacci wished to contest the forfeiture in court, he would have to "file a claim of ownership and a bond in the amount of $2,399 with the FBI by December 13, 1993." It also explained that if he wished to request a pardon of the forfeited property, Cretacci would have to submit, by that same date, a petition for remission or mitigation of the forfeiture that included proof of his "ownership interest in the property and circumstances which [he] believe[s] justify return of

the property or return of any interest in the property." Cretacci did not respond to either of the government's invitations. Accordingly, the FBI effected an administrative forfeiture of the car.

On January 5, 1994, after the forfeiture became final, Cretacci moved to dismiss the pending criminal indictment against him on double jeopardy grounds. The indictment charged Cretacci with two counts of Hobbs Act Robbery, under 18 U.S.C. § 1951, and one count of using and carrying a firearm in a crime of violence, under 18 U.S.C. § 924(c). Cretacci contended that, in light of the prior forfeiture of the Toyota MR–2, it would constitute double jeopardy were the government to prosecute him criminally.

Approximately a month later, a second superseding indictment issued charging Cretacci with additional money laundering counts.[2] At a hearing on his double jeopardy motion in April of 1994, Cretacci contended that the new money laundering counts strengthened his double jeopardy defense because the forfeiture had been premised on money laundering violations.

The district court denied Cretacci's motion to dismiss the indictment. Cretacci appeals.

## II.

■ The district court denied the motion to dismiss on the ground that because the Toyota MR–2 had been purchased with stolen money, no double jeopardy violation occurred. Although the district court's conclusion may be in conflict with our subsequent holding in *$405,089.23,* we need not consider that question here. Instead, we affirm the district court on a different ground. We hold that the administrative forfeiture of the Toyota MR–2 did not constitute punishment of

---

1. We note that the Seventh Circuit has reached a similar conclusion, *see United States v. Torres,* 28 F.3d 1463, 1466 (7th Cir.1994), as have a number of district courts. *See, e.g., United States v. Walsh,* 873 F.Supp. 334, 336–337 (D.Ariz.1994); *but see United States v. Plunk,* No. A94–036 (JWS) (D.Alaska, November 4, 1994) (declining to follow *Torres* and holding that an uncontested administrative forfeiture constitutes prior punishment).

2. Specifically, the new indictment charged Cretacci with one count of conspiracy to violate 18 U.S.C. § 1951, two counts of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), one count of money laundering under 18 U.S.C. § 1957, and one count of interstate transportation of stolen property under 18 U.S.C. § 2314.

Cretacci for purposes of the Double Jeopardy Clause. ·

■ Before explaining our reasons for our conclusion, we address Cretacci's contention that we may not consider his failure to participate in the forfeiture proceeding because the government did not raise that issue below. While Cretacci is correct that we generally do not consider issues raised for the first time on appeal, the rule is not an absolute one. We may consider an issue if it is "purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991) (quoting *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990)).[3]

■■ The question whether an administrative forfeiture of unclaimed property constitutes punishment for purposes of the Double Jeopardy Clause is "purely one of law." Moreover, the government's failure to raise the issue below did not prejudice Cretacci in any way. Cretacci decided not to claim the property well before his motion to dismiss the indictment was filed or heard. In fact, the forfeiture had already been effected at the time that Cretacci filed his motion. Thus, the government's failure to raise the issue of the effect of the administrative forfeiture in connection with the hearing on the motion could not possibly have influenced Cretacci's decision not to claim ownership of the property. Equally important, had the government raised the issue in the district court, there is nothing different that Cretacci could have done that could have affected the outcome of the motion. Introducing proof that he indeed owned the MR–2 would have been to no avail. For double jeopardy purposes, as we explain below, the critical time for making a claim of ownership had already passed. Finally, Cretacci suggests no other way in which he could have been prejudiced, and we certainly can conceive of none.

### III.

Cretacci contends that the forfeiture of the car constituted punishment because it was akin to a default judgment against him. We disagree and conclude instead that an administrative forfeiture of unclaimed property simply constitutes the taking of abandoned property. We hold that such a taking imposes no "punishment" for purposes of the Double Jeopardy Clause.

■ By statute, the government has the authority, in some circumstances, to effect an administrative or "summary" forfeiture and thereby to avoid a judicial proceeding. *See United States v. $2,857.00*, 754 F.2d 208, 211–12 (7th Cir.1985) (describing procedure); *United States v. One 1971 BMW 4–Door Sedan*, 652 F.2d 817, 819 (1981) (same). The administrative forfeiture procedures set forth in 19 U.S.C. §§ 1602–1618 apply to the type of forfeiture in question here. *See* 18 U.S.C. § 981(d).

■ Under the administrative forfeiture procedure, if the property is not claimed within a specified period of time, the agency that seized the property may declare it "forfeited" and sell it "in the same manner as merchandise *abandoned* to the United States[.]" 19 U.S.C. § 1609(a) (emphasis added). In light of the fact that the statute requires the government to notify potential owners of its intention to forfeit seized property, and the fact that, under the statute, if no claim of ownership is asserted, the government is permitted to sell the unclaimed property as if it had been "abandoned to the United States," we conclude that an owner who receives notice of the intended forfeiture and fails to claim an ownership interest in the property has effectively abandoned it.

Just as the seizure of abandoned property cannot be said to implicate the former owner's privacy rights, *see United States v. Huffhines*, 967 F.2d 314, 318 (9th Cir.1992); *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir.1986), the forfeiture of abandoned property cannot be said to implicate

---

**3.** Cretacci relies, in part, on the fact that in *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Supreme Court declined to decide a related forfeiture question because it

had not been raised "below." *Id.* at —— n. 9, 114 S.Ct. at 1942 n. 9. We find nothing in *Kurth Ranch* that undermines the rule permitting a court of appeals to consider an issue of law not raised in the district court.

the former owner's double jeopardy rights. In each instance, the government has acted against property that the owner has "renounce[d] utterly" and to which he has "relinquished all right, title, claim, and possession." *Black's Law Dictionary* 2–3 (5th Ed.1979) (defining the terms "abandon" and "abandoned property"). Thus, we conclude here that Cretacci abandoned the property and that its forfeiture did not serve to "punish" him.

■ Finally, we reject the argument that by requiring a defendant to claim his property we force him to sacrifice his right against self-incrimination in order to preserve his right against Double Jeopardy. At some point, a defendant who seeks to prove that a prior forfeiture "punished" him would have to claim that he owned the forfeited property. The effect of our rule is only to require that such a claim be asserted in the civil forfeiture proceeding itself and not simply in the motion to dismiss the criminal indictment. Moreover, a defendant does not risk incriminating himself by claiming that he owns property that is subject to forfeiture. A defendant's claim of ownership at a pre-trial suppression hearing of property that he contends was unlawfully seized may not be used to prove the defendant's guilt. *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968). For the same reason, a defendant's claim of ownership of property that was subject to forfeiture may not be used for that purpose. As the Supreme Court has explained, it is "intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.* (holding that a defendant's assertion of ownership in seized property at a pre-trial suppression motion could not later be used against him to prove guilt).

## IV.

The government's forfeiture of the abandoned property imposed no "punishment" upon Cretacci and thus did not place him in jeopardy. Accordingly, we reject his claim that his subsequent criminal prosecution constitutes double jeopardy.

AFFIRMED.

KLEINFELD, Circuit Judge, concurring:

I concur in the reasoning and the result reached by the majority, except for one detail. I would not reach the issue of whether, under *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), a claim of ownership in a civil forfeiture proceeding can be used against the claimant in a subsequent criminal proceeding. Abandonment of property, like a gift, relinquishes title. *Fidelity–Philadelphia Trust Co. v. Lehigh Valley Coal Co.*, 294 Pa. 47, 143 A. 474 (1928). Property valued by the true owner is frequently abandoned because that value is exceeded by some cost associated with retaining the property, as when a fishing vessel sinks off the Aleutians, or a diamond ring falls into a crevasse. That the relinquishment may result from a calculation that the penal risk of a claim exceeds the value of the property does not, to my mind, implicate the Fifth Amendment. The property is abandoned regardless. The majority's reasoning is persuasive to me without the *Simmons* reasoning.