UNITED STATES of America

v.

Ayman A. EL–DIFRAWI
et al., Defendants.

Cr.No. 94–162(TFH).

United States District Court,
District of Columbia.

Aug. 24, 1995.

---

Peggy Ellen & Roger Burke, Assistant U.S. Attorneys, U.S. Attorney's Office, Washington, DC, for the Government.

Chris & Mary Davis, Washington, DC, for El–Difrawi.

James L. Lyons, Washington, DC, for Patrick Read.

Frederick Sullivan, Bowie, MD, for Moheyeldein.

Nancy Luque, Washington, DC, for Elliot.

David Stringer, Washington, DC, for Bradshaw.

Christopher Warren, William DeStefano, Philadelphia, PA, for Rubenfeld.

### MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

The defendants in this case are charged with wire fraud, mail fraud, and related conspiracy and aiding and abetting counts. Three of the defendants have moved to dismiss the indictment on double jeopardy grounds. They argue that the combination of previous administrative forfeitures and the impending trial would punish them twice for the same offense. For the reasons stated below, the Court will deny the defendants' motion.

### I. BACKGROUND

On February 2, 1991, the FBI executed a search and seizure warrant and removed computer equipment from the Washington, D.C. offices of a company called Shearson Management Group (SMG). On February 28 of the same year, pursuant to a separate seizure warrant, the FBI seized a total of $15,887.00 in U.S. currency from various accounts at a northern Virginia bank. One account was in defendant Marwan Moheyeldien's name, another account was in the name of SMG, and two other accounts belonged to other companies. The government has alleged that the defendants established SMG as part of the fraudulent behavior charged in the indictment and that all three of the defendants filing this motion were corporate officers of SMG.

The seizure warrant was premised on the magistrate judge's finding of probable cause that the funds were used for illegal money laundering in violation of 18 U.S.C. § 1956. The affidavit in support of the warrant alleged that Moheyeldien had used the money for various transactions with the intent of

continuing the defendants' scheme to defraud.

In April and May of 1991, notices of forfeiture were sent to defendants Moheyeldien, Ayman El–Difrawi, Patrick Read, and another defendant, as well as to SMG itself. The notices stated that the government had initiated an administrative forfeiture proceeding pursuant to 18 U.S.C. § 981(a)(1)(A), which provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [the money laundering provisions] of this title or any property traceable to such property" is forfeitable. The procedures for such forfeitures are set forth in the customs law. 18 U.S.C. § 981(d). The notices of forfeiture announced that the government would proceed pursuant to 19 U.S.C. § 1609, which is the customs statute providing for "summary forfeiture" when no one claims the property at issue. This proceeding substitutes an administrative declaration of forfeiture by the executive branch for a judicial decree of forfeiture.

The defendants did not respond to the notices of forfeiture, and the summary proceedings were completed. In August 1991, the computer equipment was declared forfeited. In January 1992, the money was declared forfeited. The United States now has title to the property and its administrative declaration of forfeiture has the same effect as a judgment of forfeiture from a district court. 19 U.S.C. § 1609(b).

On April 20, 1994, a grand jury returned an indictment charging the defendants with conspiracy, wire fraud, mail fraud, and aiding and abetting. The indictment does not charge a violation of the money laundering statute. On July 6, 1995, defendant Moheyeldien filed this motion. Read and El–Difrawi have since joined in its filing.

## II. ANALYSIS

### A. The Double Jeopardy Clause

■ The Double Jeopardy Clause of the Fifth Amendment states: "nor shall any per-

son be subject for the same offence to be twice put in jeopardy of life or limb." Though neither life nor limb is at stake here, "it is well settled that the Amendment covers imprisonment and monetary penalties." *Department of Revenue of Montana v. Kurth Ranch*, — U.S. —, — n. 1, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994) (citations omitted). It is also oft-repeated that the clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) (citation omitted).[1] The third prong regarding multiple punishments is at issue here. The defendants argue that the forfeiture and a conviction at trial would doubly punish them for the offenses charged in the indictment.

### B. The Supreme Court's Definition of Jeopardy

■ A proceeding need not be denominated as criminal in order to invoke the protections of the Double Jeopardy Clause. "[A] civil as well as a criminal sanction constitutes punishment when the sanction as applied serves.... the goals of punishment." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02. In recent years, the Supreme Court has expanded the class of proceedings which it considers to be punishment for purposes of double jeopardy analysis.

Older double jeopardy challenges to civil sanctions usually involved monetary penalties of a statutorily fixed amount. Defendants tended to object to these penalties after they had already faced criminal prosecution for the same offense. *See, e.g., Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938) (50% penalty above taxable amount for tax fraud); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (double damages plus

---

1. *But see Kurth Ranch*, — U.S. at —, 114 S.Ct. at 1955 (Scalia, J., dissenting) (asserting that multiple punishments are not forbidden by the Double Jeopardy Clause and that Supreme Court's frequent representations to the contrary stem from misreading of 1874 case). The Supreme Court has yet to address Justice Scalia's concerns in full and this Court will proceed on the assumption that the multiple punishments bar is valid.

$2000 for each instance of government contracts fraud); *Rex Trailer Co. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956) (double damages plus forfeiture of goods plus $2000 for each instance of fraudulent assertion of veterans purchasing rights); *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (forfeiture of goods plus fine in amount of value of goods for customs fraud). In each of these cases, the Supreme Court held that the penalty was remedial in purpose because it was designed to compensate the government for its expenses in enforcing the statute. Because the fine was remedial and not punitive, the Court reasoned, jeopardy did not attach. *See, e.g., Emerald Cut Stones,* 409 U.S. at 237, 93 S.Ct. at 493 (penalty "serves to reimburse the Government for investigation and enforcement expenses"). Though the statutory penalties were not exactly calibrated to the government's losses or costs, the Court decided in the early cases that "the Government is entitled to rough remedial justice ... according to somewhat imprecise formulas ... without having been deemed to have imposed a second punishment for the purpose of double jeopardy analysis." *Halper,* 490 U.S. at 446, 109 S.Ct. at 1900.

After decades of defending these fixed penalties against double jeopardy challenges, the Supreme Court finally encountered a set of facts it could not countenance. In *Halper,* the defendant had submitted 65 false Medicare claims, each of which defrauded the government of nine dollars, for a total loss of $585. After a criminal conviction, the government sought civil penalties pursuant to the False Claims Act. That statute allowed the government to seek $2000 per instance of fraud, in addition to recovery of the actual loss and the government's litigation costs. The total potential recovery was more than $130,000.

Halper appealed to the Supreme Court, arguing that the post-trial civil penalties were punitive and therefore subjected him to double jeopardy. The Court reviewed *Mitchell, Hess, Rex Trailer,* and *Emerald Cut Stones* and noted that "[t]hese cases do not tell us ... what the Constitution commands when one of those imprecise formulas authorizes a supposedly remedial sanction that does not remotely approximate the Government's damages and actual costs, and rough justice becomes clear injustice." 490 U.S. at 446, 109 S.Ct. at 1900–01.

The Supreme Court held that the False Claims Act fines in Halper's case, unlike the statutory penalties previously reviewed by the Court, were punitive. It explained:

> What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused.... [When] the civil penalty sought ... bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word,

a double jeopardy inquiry is appropriate. 490 U.S. at 449, 109 S.Ct. at 1902.

A few years later, the Court extended *Halper*'s rule to *in rem* forfeitures. It held that a statute providing for the forfeiture of conveyances and real property associated with drug trafficking was punitive. *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Though *Austin*'s ultimate holding concerned the Excessive Fines Clause of the Eighth Amendment, and not the Double Jeopardy Clause, the distinction is without import here. The analysis in *Austin* relied heavily upon double jeopardy cases, including *Halper,* and referred to the two amendments nearly interchangeably.

In deciding that the forfeiture of conveyances and real property was punitive, the Supreme Court rejected the idea that such forfeitures could properly be considered as reimbursement for the government's losses and expenses. The Court explained that "[t]he value of the conveyances and real property forfeitable ... can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." —— U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14.

Furthermore, the Court noted that the forfeiture statute was punitive because it was

drafted to penalize only those property owners who had committed crimes. Its innocent owner exemptions "serve to focus the provisions on the culpability of the owner in a way that makes them look more like punishment, not less." The Court pointed out that *in rem* forfeitures had historically proceeded without regard to the culpability of the owner. By now requiring that the owner of the property be guilty of drug trafficking, the statute appeared aimed at punishing the individual and did not seem to focus upon recouping the government's losses, which could be accomplished by forfeiting property regardless of the owner's guilt. *Id.* at —— ——, 113 S.Ct. at 2810–11.

Finally, the Court also noted that forfeiture statutes traditionally had a punitive purpose and that the legislative history of the statute in question showed that Congress intended to continue the trend and punish the defendants targeted by the statute. —— U.S. at —— —— ——, 113 S.Ct. at 2808–12.

## C. The Ninth Circuit's Application of *Austin* to § 981

The Ninth Circuit recently applied *Austin* to the forfeiture statute at issue in this case. *United States v. $405,089.23 in U.S. Currency,* 33 F.3d 1210 (9th Cir.1994). The court held that the forfeiture of funds pursuant to § 981 was punitive and that jeopardy did attach when forfeiture of currency was premised on violations of the money laundering statute. Following the rationale set forth in *Austin,* the opinion in *$405,089.23* first focused on *Austin*'s "historical presumption" that forfeiture is punitive and that Congress must therefore be clear if it wishes to draft a forfeiture statute whereby jeopardy does not attach. 33 F.3d at 1221. The Ninth Circuit noted that § 981 exempts innocent owners just as the drug trafficking forfeiture statute in *Austin* did, and concluded that Congress meant to take punitive aim at people who had committed the crimes. *Id.*

This opinion was not welcomed warmly throughout the Ninth Circuit. A petition for rehearing was denied, but seven judges dissented from the denial. 56 F.3d 41 (9th Cir.1995). They argued (1) that the Excessive Fines Clause holding in *Austin* could not

fairly be imported into the double jeopardy realm; and (2) that the property forfeited in *$405,089.23* constituted criminal proceeds, so that its forfeiture could not be considered anything but remedial. The dissenters fretted that the denial "lets stand a decision that could free hundreds of drug dealers across the western United States." 56 F.3d at 42 (citation omitted).

Three other circuits have reached this issue. Last month, the Sixth Circuit sided with the Ninth Circuit. *United States v. Ursery,* 59 F.3d 568, 573 (6th Cir.1995) (agreeing with *$405,089.23* that "*Austin* resolves the 'punishment' issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause").

Two circuits have reached the opposite conclusion. In *United States v. Tilley,* 18 F.3d 295 (5th Cir.1994), the court held that the forfeiture of the personal and real property of a group of drug traffickers was not punitive because the property constituted criminal proceeds. The court held that *Austin* did not apply because the relationship between the value of a drug trafficker's proceeds and the costs to society of that drug trafficking were proportional, so the "rational relationship" sought by the *Austin* court was present. It explained that the forfeiture served the "wholly remedial purposes" of recouping enforcement costs and societal losses. 18 F.3d at 299. It also held that a defendant who is forced to give up criminal proceeds is not punished, because "the forfeiting party loses nothing to which the law ever entitled him." *Id.*

The Second Circuit approaches the punishment inquiry from a different point of view. It maintains that *in rem* forfeitures are not subject to the *Halper* proportionality analysis. The court relies upon the venerable fiction that the object itself is the victim of the forfeiture, so that the owner is not punished. *United States v. United States Currency in the Amount of $145,139,* 18 F.3d 73, 74–75 (2d Cir.), *cert. denied sub nom Etim v. United States,* —— U.S. ——, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994). The Second Circuit has repeated this principle even after the Supreme Court released its decision in *Aus-*

*tin.* *See, e.g., United States v. Morgan,* 51 F.3d 1105, 1113 (2d Cir.1995).

The defendants urge the Court to follow the Ninth Circuit's holding. However, the rationale of the Ninth Circuit dissenters and of *Tilley* may apply here. If the forfeited currency and property all constitute proceeds of the defendants' alleged crimes, then the forfeiture may be remedial if it is proportional to society's enforcement costs and the victim's losses. Unfortunately, the Court does not have enough information to determine whether the forfeited currency and property are criminal proceeds. Though the government alleges that the defendants have reaped very large gains from their illegal activities, and that the forfeited money and property are part of that gain, the Court must await the evidence at trial. None of the pretrial proceedings have cast any light upon the character or origin of the forfeited currency and property. Without a trial or a prohibitively elaborate pretrial evidentiary hearing, the Court cannot begin to decide whether the *Tilley* rationale should apply. However, as explained below, the defendants' double jeopardy argument must fail in any case.

## D. Attachment of Jeopardy in Uncontested Administrative Forfeitures

█ A very recent Ninth Circuit case defeats the defendants' argument that the forfeiture subjected them to jeopardy. On August 4, 1995, the court held that jeopardy does not attach in uncontested administrative forfeitures. *United States v. Cretacci,* 62 F.3d 307 (9th Cir.1995). It explained that "an administrative forfeiture of unclaimed property simply constitutes the taking of abandoned property" and that "the forfeiture of abandoned property cannot be said to implicate the former owner's property rights." 62 F.3d at 310–11.

In *Cretacci,* the defendants faced the same administrative forfeiture proceeding used here. Like the defendants in this case, Cretacci did not respond. On appeal, he maintained that to have claimed any property ownership would have violated his Fifth Amendment right against self-incrimination, and argued that he was therefore forced to remain silent during the forfeiture period. The court rejected this argument and noted that the Supreme Court has stated that it is "intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.,* quoting *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968). The Ninth Circuit explained that *Simmons* held that a defendant's pretrial assertion of property rights in a suppression hearing could not be used against him at trial. The court reasoned, without citing any extant authority, that a similar protection would apply if a defendant asserted a property right at a pretrial forfeiture proceeding.

The Seventh Circuit has similarly held that a defendant is a nonparty to an administrative proceeding when the defendant does not claim ownership. As a nonparty, the Court explained, the defendant cannot be punished and jeopardy does not attach. *United States v. Torres,* 28 F.3d 1463 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). The Seventh Circuit did not address the self-incrimination issue raised in *Cretacci.*

*Cretacci*'s consideration of the Fifth Amendment problems raised by a pretrial forfeiture is not extensive. This Court is somewhat troubled by the fact that the Ninth Circuit's reasoning extends the Supreme Court's rule in *Simmons* to a new context and presumes that defendants should have realized that they would enjoy such legal protection, even though it was heretofore unannounced. In the absence of precedent to the contrary, however, this Court will follow *Cretacci* and *Torres* and hold that jeopardy did not attach to the defendants filing this motion since they did not assert ownership of the forfeited property at any time and therefore did not become parties to the forfeiture proceeding.

## E. Same Offense Test

█ An alternative ground exists for denying the defendants' motion, though neither party raised it in briefing this motion. Even if the forfeitures were punitive, they did not punish the defendants for the same offenses as those charged in the indictment. There-

fore, no double jeopardy problem exists. The Fifth Amendment only bars double punishment for "the same offense." If two statutorily defined offenses are similar enough, they can constitute the same offense for double jeopardy purposes. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In order to determine whether two offenses are sufficiently similar to invoke the double jeopardy bar, a court must ask whether "[e]ach of the offenses ... requires proof of a separate element." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182.

▪ Even if no unique element exists for each offense, double jeopardy still may not apply. The *Blockburger* tests rests upon the assumption that "Congress ordinarily does not intend to punish the same offense under two different statutes." *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980). If there is "clear indication of contrary legislative intent," making it apparent that Congress did intend two separate punishments, then there is no double jeopardy bar. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). The *Blockburger* elements test informs the inquiry into legislative intent, but courts may look at other material to make their conclusion. If a court determines that Congress intended two offenses to be separately punishable, then it must evaluate the double jeopardy clause and determine if the "broader" offense is considered the "same" offense as the predicate offense. *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).

▪ The D.C. Circuit has not considered § 1956 and its underlying offenses in light of *Blockburger* or the more recent cases cited above, but other courts have concluded that the two are distinct for double jeopardy purposes. *See United States v. Edgmon,* 952 F.2d 1206, 1213 (10th Cir.1991) (§ 1956 and conversion not same offense); *United States v. Brown,* 31 F.3d 484, 496 n. 20 (7th Cir. 1994) (§ 1956 and bank fraud not same offense); *United States v. Skinner,* 946 F.2d 176, 178 (2d Cir.1991) (§ 1956 and unlawful use of the mails not same offense). These opinions reach the conclusion that Congress intended § 1956 to be a distinct offense from the underlying illegal activity which generated the money, and they also conclude that the offenses are in fact distinct.

Section 1956(a)(1)(B)(i) sets forth a definition of money laundering that does not require the defendant to have committed the underlying crime. It subjects to criminal penalty anyone who

knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... knowing that the transaction is designed in whole or in part ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

In *Edgmon,* the Tenth Circuit held that "Congress intended money laundering to be a separate offense from the 'specified illegal activity' that is its predicate offense." 952 F.2d at 1214. The court followed the analysis in *Garrett* and held that regardless of the result of the *Blockburger* inquiry, Congress did not intend money laundering and underlying offenses to be punishable only once and also concluded that the two offenses were not considered the "same". The court reviewed the legislative history of the money laundering statute and determined that Congress was concerned with "the gap in the criminal law with respect to the post-crime hiding of the ill-gotten gains." 952 F.2d at 1214. The court concluded that "Congress intended simply to add a new criminal offense to punish activity that was not previously punished criminally." 952 F.2d at 1215. *Cf. United States v. Hollis,* 971 F.2d 1441 (10th Cir. 1992) (applying *Edgmon* reasoning to hold that § 1341 and 18 U.S.C. § 1957 were separate offenses).

▪ The above precedent provides ample rationale for denying the defendants' argument, but the *Blockburger* test alone is enough to defeat the motion to dismiss the indictment. The D.C. Circuit recently reviewed the elements of § 1956 in detail for the first time. It held that the statute requires the government to prove four elements:

(1) that [the defendant] conducted or attempted to conduct a financial transaction,

(2) that the transaction involved the proceeds of a statutorily specified unlawful activity,

(3) that [the defendant] knew the proceeds were from some form of illegal activity, and

(4) that [the defendant] knew a purpose of the transaction was to conceal or disguise the nature, location, source ownership, or control of the proceeds.

*United States v. Wynn*, 61 F.3d 921, 924 (D.C.Cir.1995). According to the above description, the money laundering statute does not require that the defendant actually have committed the underlying crime. In fact, the court in *Wynn* inquired whether the defendant charged with money laundering knew that some other individuals had committed crimes in order to obtain the funds.

This definition of the elements of § 1956 shows that a *Blockburger* analysis of § 1956 and the underlying offenses here should conclude that the offenses are not the same and do not invoke the double jeopardy bar. Section 1956 requires proof of some concealing or disguising financial transaction, which is not required to prove mail fraud or wire fraud. The fraud statutes, of course, require the government to show that the defendant engaged in the fraud itself. As *Wynn* suggests by its silence, § 1956 includes no such element.

The forfeitures punished the defendants solely on the basis of the money laundering violations. The affidavit in support of the application for warrant stated that

I have probable cause to believe that Marwan Mohey El Dien has committed federal criminal violations, specifically, among others, executing a scheme and artifice to defraud, and to obtain money from victims by means of false and fraudulent pretenses in violation of Title 18 USC section 371, 1341, 1343, and 1029. As a result of those

criminal violations Marwan Mohey El Dien has realized millions of dollars in illegal proceeds. He has conducted financial transactions with these illegal proceeds by depositing and withdrawing funds by check or other means from the above-named accounts with the intent to promote the carrying on of the illegal scheme to defraud, in violation of 19 USC 1956(a)(1)(A)(i). Accordingly, the moneys described in paragraph 2, above, are subject to seizure and forfeiture pursuant to 18 USC 981(a)(1)(A), as representing property involved in transactions in violation of 18 USC 1956.

Affidavit at 18–19 (Attachment 7 to defendant's motion to dismiss indictment).

This paragraph does mention other crimes which are now included in the indictment, but there are two reasons why the forfeitures did not punish the defendant for those crimes. First, the forfeiture statute itself is conditioned on the money laundering violation and not on the crimes charged in the indictment.[2] Second, the subsequent paperwork respecting the forfeiture does not mention any other crimes other than the money laundering violations. The notices of proposed forfeiture say only that the proceedings are "for violation of the Money Laundering Control Act of 1986." Attachments 3 and 5 to defendant's motion. The declarations of forfeiture did not mention any violations. Attachments 4 and 6 to defendant's motion. The seizure warrant itself also did not name the violation, but the application for warrant cited "illegal money laundering concerning a violation of Title 18 United States Code, Section(s) 1956." Attachment 7 to defendant's motion. Because the forfeiture and indictment punish separate offenses, the defendants cannot state a double jeopardy claim.

## F. Standing

The parties disagree about whether El-Difrawi and Read have standing to make this

---

**2.** Section 981(a)(1)(A) allows forfeiture for violations of three other statutory provisions in addition to the money laundering statute relied upon here. However, those provisions are not related to the charges in the indictment. 18 U.S.C.

§ 1957 is a cousin to the money laundering statute and criminalizes some other financial transactions conducted with property derived from unlawful activity. 31 U.S.C. §§ 5313(a) and 5324(a) involve currency transactions reporting.

double jeopardy argument.[3] Though they were sent copies of the forfeiture notices, the government contends that they were only corporate officers of SMG and had no individual interest in the forfeited property. El-Difrawi and Read respond by pointing out that the government has repeatedly alleged that SMG was merely a facade set up for the individual use of the defendants. They object to the government's apparent shift in characterization for purposes of this motion.

Because the defendants did not make an appearance at the forfeiture stage, the Court cannot and need not resolve this issue. It cannot resolve the question because it lacks factual information about the actual ownership patterns of the SMG corporation. It need not resolve the issue because *Cretacci* and *Torres* indicate that uncontested administrative forfeitures do not place the defendants in jeopardy.

### III. CONCLUSION

The Court will deny the defendants' motion to dismiss the indictment. Though the Supreme Court's recent pronouncements in *Halper* and *Austin* give the defendants a colorable argument, this Court cannot decide whether to apply the Ninth Circuit's extension of this line of case law without knowing whether the forfeited property in this case constitutes criminal proceeds. Despite this ambiguity, another issue is dispositive. The uncontested administrative forfeitures did not involve the defendants as parties and therefore jeopardy did not attach at that stage. The defendants' double jeopardy claim therefore fails. In the alternative, it fails because the forfeitures and the upcoming trial are aimed at punishing separate offenses.

The defendants will have an opportunity to take an interlocutory appeal from this decision. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Other circuits have ruled that a District Court may certify a double jeopardy appeal as frivolous and continue with the trial of the movants pending the outcome of the appeal, but this

circuit has never so held. It has, however, stated that the Court of Appeals may resort to summary disposition in order to preserve a trial schedule. *United States v. Glover*, 731 F.2d 41, 45 (D.C.Cir.1984). This Court will not begin trial of the moving defendants until their appeal is resolved, but the Court urges all parties involved to expedite the process to the greatest extent possible.

An order will accompany this opinion.

### *ORDER*

Pursuant to the Memorandum Opinion issued today, it is hereby **ORDERED** that the defendants' motion to dismiss the indictment is **DENIED.** If defendants El-Difrawi, Read, and Moheyeldien take an interlocutory appeal of this ruling, the Court will not proceed with their trial until the appeal is resolved. Trial of the other defendants in this case will proceed as scheduled. The parties are urged to keep the Court apprised of the status of any appeal and are further urged to move expeditiously. Trial will begin on October 17, 1995, and is projected to last for 3 months.

---

**3.** Moheyeldien had a personal bank account which was forfeited and the government does not

challenge his standing to bring this motion.