65 F.3d 781
 95 Cal. Daily Op. Serv. 7202, 95 Daily Journal
D.A.R. 12,289
UNITED STATES of America, Plaintiff-Appellee,
v.
Alejandro SANCHEZ-COBARRUVIAS, indicted as Alejandro
Cobarruvias-Sanchez, Defendant-Appellant.
 No. 94-50581.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Aug. 10, 1995*.
Decided Sept. 12, 1995.
 
 Peter A. Vance, Swain & Vance, San Diego, CA, for defendant-appellant.
 Mary C. Lundberg, Assistant United States Attorney, San Diego, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before: THOMPSON, LEAVY, and TROTT, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 In this case we are called upon to determine whether the government is precluded from bringing criminal charges against an individual whose property had been subject to a prior civil administrative forfeiture proceeding. For the reasons which follow, we conclude that double jeopardy does not apply.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 On May 19, 1994, United States Border Patrol agents discovered several shotguns and rifles concealed in the trunk of an automobile owned and driven by Alejandro Sanchez-Cobarruvias ("Sanchez"). The officers seized Sanchez's vehicle as well as the guns, which belonged to his passenger, Jose Luis Lopez-Coronel ("Lopez"), and placed both men under arrest. Sanchez opposed the seizure of his car by filling out a "Petition for Remission or Mitigation of Forfeiture and Penalties Incurred" form, and checking off the appropriate box on the related "Election of Proceedings" form.
 
 
 3
 On June 1, 1994, a two-count indictment was filed charging Sanchez and Lopez with conspiring to export firearms, aiding and abetting, and unlawful exportation of firearms, in violation of 18 U.S.C. Secs. 2 (aiding and abetting) and 371 (conspiracy), and 22 U.S.C. Secs. 2778(a), (b), and (c) (unlawful exportation). Shortly thereafter, United States Customs officials initiated civil administrative forfeiture proceedings against Sanchez's car. On June 7, 1994, Customs officers mailed a "Notice of Seizure" form to Sanchez, and later (August 1, 1994) sent him a "Notice of Seizure and Intention to Forfeit," both of which Sanchez acknowledges having received. The August 1 notice explained the administrative forfeiture process and, inter alia, informed Sanchez that he could halt the administrative process, and force the government to go into federal district court to obtain a decree of judicial forfeiture, by posting a bond in the amount of $250 at any time within the next three weeks (i.e., before August 22, 1994).
 
 
 4
 Sanchez did not post a bond and made no further inquiries regarding the forfeiture of his automobile until August 29, 1994, when, believing the civil proceeding to be closed and his vehicle forfeited, he sought leave of court in his criminal prosecution to file a motion to dismiss the indictment on the ground of double jeopardy. The district court granted permission and, on September 12, 1994, Sanchez filed a motion to dismiss, arguing that the civil forfeiture precluded the government from prosecuting him for the crimes charged in the indictment. The government filed its opposition on September 30, 1994, arguing that jeopardy had not attached because the civil forfeiture proceeding was not closed. The matter was set down for an evidentiary hearing on October 12, 1994.
 
 
 5
 Following a lengthy hearing, the district court entered an order on October 13, 1994, denying the motion to dismiss.[1] The court held that, because no final disposition had taken place in the civil administrative forfeiture proceeding, no forfeiture had occurred and jeopardy had not attached, leaving Sanchez subject to criminal prosecution. Sanchez has timely appealed from that decision.[2]
 
 ANALYSIS
 Standard of Review
 
 6
 "A district court's denial of a motion to dismiss an indictment on double jeopardy grounds is reviewed de novo." United States v. Chick, 61 F.3d 682, 686 (9th Cir.1995) (citing United States v. Goland, 897 F.2d 405, 408 (9th Cir.1990)).
 
 Discussion
 
 7
 The Fifth Amendment's Double Jeopardy Clause was designed to protect against three abuses: (1) a second prosecution for the same offense after a judgment of acquittal; (2) a second prosecution for the same offense after a judgment of conviction; and (3) multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Accordingly, the government can be barred from bringing a subsequent civil forfeiture action against a defendant for conduct for which the defendant was previously criminally prosecuted. United States v. $405,089.23 U.S. Currency, 33 F.3d 1210, 1216 (9th Cir.1994), as amended on denial of reh'g, 56 F.3d 41 (1995).
 
 
 8
 By the same token, double jeopardy may act as a bar to the government bringing a criminal prosecution following a civil administrative forfeiture proceeding, if the prior civil forfeiture is deemed to constitute punishment. United States v. Cretacci, 62 F.3d 307, 309 (9th Cir.1995). In Cretacci we held that there is no punishment, and therefore double jeopardy does not attach, when the prior civil administrative forfeiture proceeding involved unclaimed property, i.e., the defendant in the subsequent criminal prosecution failed to mount an administrative challenge to the civil forfeiture. Id. at 310.
 
 
 9
 When a claimant does administratively challenge a civil forfeiture proceeding, however, there must be a degree of finality to the prior proceeding before double jeopardy may be deemed to attach. Cf. United States v. Chick, 61 F.3d at 686. Although not central to our holding in Chick, we noted in that case that, "[W]here a claimant/defendant has been subjected to a civil forfeiture that amounts to punishment and judgment has already been entered, the Fifth Amendment's Double Jeopardy Clause precludes the Government from bringing a separate criminal action for the same offense which the civil forfeiture was based upon." Id. (emphasis added).
 
 
 10
 Generally speaking, a claimant to seized property can halt any civil administrative forfeiture proceeding, and force the government to go to federal district court, by filing a notice of claim, posting a bond in the amount of either $5,000 or 10% of the property's estimated value, whichever is lower (but not less than $250), and agreeing to pay the costs of the judicial proceeding should the government ultimately prevail. 19 U.S.C. Sec. 1608.[3] If the claimant elects not to file a claim and/or post a bond within twenty days of the issuance of the Notice of Seizure and Intention to Forfeit, however, the government will declare the item forfeited and sell it at public auction. 19 U.S.C. Sec. 1609(a).[4] The effect of such an administrative declaration of forfeiture is the same as a judicial decree of forfeiture. 19 U.S.C. Sec. 1609(b).[5]
 
 
 11
 Sanchez argues that forfeiture was complete on August 22 as the result of his failure to post a bond within twenty days of the August 1 Notice of Seizure and Intent to Forfeit. We reject this contention. The relevant statute says that, "If no ... claim is filed or bond given within ... twenty days ... the appropriate customs officer shall declare the ... vehicle ... forfeited, and shall sell the same at public auction." 19 U.S.C. Sec. 1609(a). The fact that section 1609(a) uses mandatory rather than hortatory language means only that the government will declare seized property forfeited and proceed to auction it off, if there has been no challenge to the forfeiture proceedings; it does not mean that forfeiture is complete as a matter of law simply because twenty days have passed. Put another way, a Declaration of Forfeiture or final Disposition Order is not an empty gesture; it is the means whereby the government legally obtains title to seized property in order to dispose of it.
 
 
 12
 In the instant appeal, Sanchez made some showing of opposing the civil forfeiture when, at the time of his arrest, he filled out the Petition for Remission or Mitigation of Forfeiture and Penalties Incurred form and checked off the appropriate box on the related Election of Proceedings form. However, and unlike the situation presented in Cretacci, there was no finality to the civil administrative forfeiture proceeding involving Sanchez's automobile: No final decision has yet been rendered in Sanchez's civil administrative forfeiture proceeding, because Customs has issued neither a Declaration of Forfeiture nor a final Disposition Order as required by 19 U.S.C. Sec. 1609.[6]
 
 
 13
 It is for this reason that the government could not and did not proceed to auction off Sanchez's vehicle: There had been no forfeiture, as evidenced by the absence of either a Declaration of Forfeiture or a final Disposition Order. See 19 U.S.C. Sec. 1609(b). The government issued neither a Declaration of Forfeiture nor a final Disposition Order because, at the time of his arrest, Sanchez had filed an administrative challenge to the threatened forfeiture of his car, and then moved to dismiss the indictment before the government had ruled on his opposition to forfeiture.
 
 
 14
 In the absence of any finality to the first proceeding, we hold that the subsequent criminal prosecution was not barred. Because we find no merit to any of Sanchez's remaining arguments, the decision appealed from is
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 [1]
 More accurately, "motions to dismiss," because Lopez had joined Sanchez in his motion
 
 
 [2]
 Although Sanchez's challenge to the district court's ruling might arguably be construed as an interlocutory appeal from a non-dispositive order, the government properly concedes that we have jurisdiction under 28 U.S.C. Sec. 1291. See United States v. Chick, 61 F.3d 682, 684-86 (9th Cir.1995)
 
 
 [3]
 Section 1608 states, in relevant part: "Any person claiming such ... vehicle ... may at any time within twenty days from the date of the first publication of the notice of seizure file with the appropriate customs officer a claim stating his interest therein. Upon the filing of such claim, and the giving of a bond ... with sureties ... that in case of condemnation of the articles so claimed the obligor shall pay all the costs and expenses of the proceedings to obtain such condemnation, ... the United States attorney for the district in which seizure was made ... shall proceed to a condemnation of the ... property in the manner prescribed by law."
 
 
 [4]
 Section 1609(a) states, in relevant part: "If no such claim is filed or bond given within the twenty days hereinbefore specified, the appropriate customs officer shall declare the ... vehicle ... forfeited, and shall sell the same at public auction...."
 
 
 [5]
 Section 1609(b) states, in relevant part: "A declaration of forfeiture under this section shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States."
 
 
 [6]
 Customs' San Diego field office apparently did not normally issue Declarations of Forfeiture in its civil administrative forfeiture proceedings, but issued so-called final Disposition Orders instead. The government argues that such final Disposition Orders should be viewed as the "functional equivalents" of Declarations of Forfeiture. In light of the fact that neither a Declaration of Forfeiture nor a final Disposition Order was issued in the instant case, however, we decline to reach the merits of this question