Dalton v. Wal-Mart                    CV-95-484-SD  06/06/96
                  UNITED STATES DISTRICT COURT FOR THE

                       DISTRICT OF NEW HAMPSHIRE


Kimberly Dalton

     v.                                    Civil No. 95-484-SD

Wal-Mart Stores, Inc.;
Lloyd Twente


                         O R D E R


     Presently before the court is the motion in limine of

defendant Wal-Mart Stores, Inc.  Wal-Mart argues that the recent

decision in McKennon v. Nashville Banner Pub. Co., ___ U.S. ___,

115 S. Ct. 879 (1995), expressly limits plaintiff's entitlement

to back pay[1] and precludes reinstatement and/or an award of front

pay.  Plaintiff objects.

     In McKennon, the Supreme Court addressed an employer's

after-acquired evidence of a plaintiff's wrongdoing and the

effect such discovery would have on the remedies afforded by the

nation's anti-discrimination laws.  McKennon, supra, ___ U.S. at

---

[1]Wal-Mart's argument seeks to limit the back pay award to
that period between plaintiff's termination (November 25, 1994)
and her subsequent conviction in Sullivan County (New Hampshire)
Superior Court.  The court notes that plaintiff's sentence was
imposed on March 2, 1995, and assumes such date is the one Wal-
Mart intends as the terminal point for back pay purposes, rather
than the March 25, 1995, date indicated in its motion.

___, 115 S. Ct. at 884-87.[2]  The bright-line rule announced by the Court is that "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  Id., 115 S. Ct. at 886-87.  Further refined, the Court's holding may be characterized as follows:

> To bar relief based on after-acquired evidence, there must be proof that: 1) the employer was unaware of the misconduct when the employee was discharged; 2) the misconduct would have justified discharge; and 3) the employer would indeed have discharged the employee, had the employer known of the misconduct.

O'Neill v. Runyon, 898 F. Supp. 777, 781 (D. Colo. 1995) (citing

---

[2]Despite plaintiff's argument otherwise, see Plaintiff's Objection at 4-5, the fact that McKennon involved the Age Discrimination in Employment Act (ADEA) while the instant action is brought under Title VII does not foreclose application of the after-acquired evidence doctrine.  See McKennon, supra, ___ U.S. at ___, 115 S. Ct. at 884 ("The ADEA and Title VII share common substantive features and also a common purpose . . . ."); Lussier v. Runyon, 50 F.3d 1103, 1108 n.3 (1st Cir.) (noting the "close relationship between the ADEA and Title VII"), cert. denied, ___ U.S. ___, 116 S. Ct. 69 (1995).  Accord Castle v. Rubin, 78 F.3d 654, 658 (D.C. Cir. 1996) (per curiam) ("Although McKennon arose under the [ADEA], its principles clearly apply in Title VII actions."); Russell v. Microdyne Corp., 65 F.3d 1229, 1240 (4th Cir. 1995) ("after-acquired evidence doctrine, as limited by the McKennon Court, might be available in [a Title VII] case"); Wallace v. Dunn Constr. Co., 62 F.3d 374, 378 (11th Cir. 1995) ("the holding of McKennon is applicable to claims brought under Title VII").

2

McKennon, supra, ___ U.S. at ___, 115 S. Ct. at 886-87; Ricky v. Mapco, Inc., 50 F.3d 874, 876 (10th Cir. 1995)).

This doctrine is born out of an acknowledgement that anti-discrimination statutes such as Title VII

> [are] not [intended as] a general regulation of the workplace but [as] law[s] which prohibit[] discrimination . . . . In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern "for the relative moral worth of the parties," but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing.

McKennon, supra, ___ U.S. at ___, 115 S. Ct. at 886 (quoting Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 139 (1968)). "The rationale underlying consideration of after-acquired evidence is that the employer should not be impeded in the exercise of legitimate prerogatives and the employee should not be placed in a better position than he would have occupied absent the discrimination." Shattuck v. Kinetic Concepts, Inc., 49 F.3d 1106, 1108-09 (5th Cir. 1995) (footnote omitted); see also Castle, supra note 2, 78 F.3d at 657 ("'[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds'" (quoting McKennon, supra, ___ U.S. at ___, 115 S. Ct. at 886)).

3

Wal-Mart has appended to its motion an excerpt from the Wal-Mart Associate Handbook detailing the "high standards of personal integrity" that all Wal-Mart employees "are expected to live up to . . . ." See Handbook Excerpt (attached to Defendant's Motion as Exhibit 2). This portion of the handbook discusses company policy regarding gifts and gratuities, honesty, shrinkage control, and company property. Highlighted and emphasized among the text is the following statement: **"Dishonesty in any form will result in immediate termination."** For the purposes of the motion sub judice, the court will assume arguendo that stealing ten tires from Wal-Mart's Tire and Lube Express department sufficiently triggers the "dishonesty" clause such that termination of the accused employee would follow.

Rather than immediately terminate Dalton on mere suspicion, Wal-Mart apparently chose to further investigate the allegations surrounding plaintiff's involvement in the tire theft, and the court will not ignore such conservative and ostensibly prudent measures when considering the issue herein raised. Accordingly, it is further assumed arguendo that Wal-Mart would have actually terminated plaintiff's employment upon corroborating evidence of her actions. Cf. O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 762 (9th Cir. 1996) (noting that courts "could hardly require employers in these cases to come forward with proof that

4

they discharged other employees for the precise misconduct at issue (though such evidence would no doubt be helpful to their case), as often the only proof an employer will have is that adduced in this case--<u>a company policy forbidding the conduct and the testimony of a company official that the conduct would have resulted in immediate discharge</u>" (emphasis added)).

Proper application of the after-acquired evidence doctrine in this action thus focuses upon the first element of the <u>McKennon</u> rule--Wal-Mart's ignorance of the alleged wrongdoing-- and is thus hampered by the underlying facts as presented to the court.

Most significantly,[3] the court notes that this is not a case of truly "after" acquired evidence, as Wal-Mart personnel had some knowledge of plaintiff's thievery and had confronted her with allegations of same prior to her termination. <u>See</u> April 11, 1995, Statement of Linda Chase (attached to Plaintiff's Objection as Exhibit A); April 13, 1995, Statement of Scott Morrisson (attached to Plaintiff's Objection as Exhibit B). If so, then

---

[3]As an initial matter, plaintiff is claiming constructive discharge, rather than outright termination, thus distinguishing this case on the facts from the bulk of the precedent being developed on after-acquired evidence. <u>But see</u> <u>Schnidrig v. Columbia Mach., Inc.</u>, 80 F.3d 1406, 1411-12 (9th Cir. 1996) (even in case asserting constructive discharge, "after acquired evidence may bear upon the specific remedy to be ordered").

the after-acquired evidence doctrine is _a fortiori_ inapplicable to the cause sub judice.  See _Russell_ _supra_ note 2, 65 F.3d at 1240 ("Absent such a negative employment decision premised upon evidence of wrongdoing, the defense cannot apply and the remedies available are not curtailed in any way.").  Scott Morrison's statement, however, indicates that although he (and others at Wal-Mart) may have inquired into the tire incident with plaintiff, complete knowledge of her culpability occurred shortly _after_ Dalton terminated the employment relationship, an action which essentially deprived Wal-Mart of the opportunity to discharge plaintiff for cause.

The court herewith finds and rules that the issue of when Wal-Mart "knew" of plaintiff's misconduct is a question of fact not subject to resolution at this time upon the present evidentiary record, thus the motion in limine to limit back pay damages and preclude the remedies of reinstatement and front pay must be and accordingly herewith is denied.[4]

---

[4]Should it later be determined, either by the court upon motion or by the jury upon special verdict questions, that the after-acquired evidence doctrine is applicable herein, it is not entirely clear what measure of back pay plaintiff would be entitled to.  Under the after-acquired evidence doctrine, "[t]he beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered."  _McKennon_, _supra_, ___ U.S. at ___, 115 S. Ct. at 886 (emphasis added).  Under this formulation of the doctrine, and upon the evidence before the court, since Wal-Mart knew about plaintiff's

6

<u>Conclusion</u>

For the reasons set forth herein, defendant Wal-Mart's motion in limine (document 22) is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

June 6, 1996

cc:  Robin C. Curtiss, Esq.
     Martha V. Gordon, Esq.
     Ellen E. Saturley, Esq.

---

thievery either just prior to or shortly after her termination, the back pay award window may be significantly less wide than either of the parties realize.  It is further noted that application of the doctrine similarly places into doubt plaintiff's ability to recover front pay.  <u>See</u> <u>Lussier</u>, <u>supra</u> note 2, 50 F.3d at 1108 ("Title VII . . . afford[s] trial courts wide latitude to award or withhold front pay according to established principles of equity and the idiocratic circumstances of each case.").

7