UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan Benito CASTRO, Defendant–
Appellant.

No. 95–50480.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1996.

Decided March 5, 1996.

David M. Dudley, Philip Kent Cohen, Los Angeles, California, for the defendant-appellant.

Beverly O'Connell and Uttam Dhillon, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Before: POOLE, WIGGINS, and
RYMER, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Juan Benito Castro interlocutorily appeals the district court's denial of his motion to dismiss the Third Superseding Indictment. Castro contends that his criminal prosecution for drug-related offenses would violate the Fifth Amendment's Double Jeopardy Clause because jeopardy attached in the prior administrative forfeiture of his property. We have jurisdiction to hear Castro's interlocutory appeal, pursuant to 28 U.S.C. § 1291. *See United States v. Chick*, 61 F.3d 682, 685 (9th Cir.), *petition for cert. filed*, 64 U.S.L.W. 3417 (U.S. Nov. 29, 1995) (No. 95–858). We affirm the district court's denial of Castro's motion.

## FACTS AND PRIOR PROCEEDINGS

On July 23, 1993, Castro was indicted for, *inter alia*, conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The Third Superseding Indictment contains additional counts unrelated to the forfeiture at issue. One count of possession with intent to distribute cocaine relates to a July 9, 1993 drug transaction, where Castro allegedly gave a cooperating witness $320,000 for twenty kilograms of cocaine. On the same day, a search warrant was executed on Castro's residence in Corona, California. During the search of the residence, Drug Enforcement Administration ("DEA") agents seized $11,890 in cash as proceeds of illegal narcotics activities.

On August 16, 1993, the DEA sent, by certified mail with return receipt requested, a Notice of Seizure of the currency to Castro at both the Metropolitan Detention Center ("MDC"), where Castro was detained, and at his residence. The Notice stated that the DEA had commenced the administrative forfeiture of the currency under 21 U.S.C. § 881 because the property was used or acquired in a drug-related offense. It informed Castro that he may (1) contest the seizure and forfeiture in court or (2) request remission (pardon) or mitigation of the forfeiture by the DEA. The Notice further outlined the procedure for contesting the forfeiture and petitioning for remission/mitigation. To contest the forfeiture, Castro needed to file a claim of ownership plus a cost bond of ten percent of the property value ($1,189) or a declaration in support of a request to proceed in forma pauperis, no later than September 14, 1993 (twenty days from August 25, 1993, the first day of publication of the Notice of Seizure in the newspaper, *USA Today*). The MDC received the Notice letter on August 25, 1993, while the letter to Castro's residence was returned to the DEA unclaimed.

Even though the return receipt shows that MDC received the Notice on August 25, 1993, Castro declared under penalty of perjury that he did not receive the Notice until September 13, 1993. Castro's attorney advised him that it would be "impossible" to file a claim and cost bond by September 14, and it was the attorney's belief that filing an untimely claim and bond would be sufficient to contest the forfeiture in light of the government's alleged delay in sending the Notice to Castro. On September 15, 1993, one day after the deadline for filing a claim to contest the administrative forfeiture, the DEA received Castro's claim to the currency.[1] Castro did not, however, submit a cost bond or affidavit of indigency. On September 20, 1993, the DEA notified Castro that (1) his claim was untimely; (2) no cost bond

---

1. On September 14, 1993, Castro mailed the claim, dated September 13, 1993, to the DEA by next-day mail. The claim states, in its entirety:

 Pursuant to 19 U.S.C. § 1608, Juan Castro, makes the demand for restitution of the defendant, $11,890.00 (Eleven Thousand Eight Hundred Ninety Dollars) and claims the right to

 defendant in this action. Claimant possesses a legal and equitable interest in the defendant property and her [sic] status is that of legal owner.

 Castro asserts that this statement sufficiently constitutes a claim of ownership and demand for a judicial hearing on the forfeiture.

or affidavit was submitted with his untimely claim; (3) steps had been taken to forfeit administratively the currency; and (4) although Castro did not file a petition for remission/mitigation of the forfeiture, the DEA would exercise its discretion and allow Castro twenty days from receipt of this letter to file such a petition before the property was forfeited. Not receiving any response from Castro, the DEA administratively forfeited the currency on October 1, 1993. The administrative declaration of forfeiture has the same force as a judicial decree of forfeiture.

On October 12, 1993, Castro submitted a second claim to the currency, which was identical to his September 15, 1993 claim, along with a cashier's check for $1,189. This second claim did not comply with the requirement that a petition for remission/mitigation be sworn under penalty of perjury. In response, the DEA sent Castro the same form letter as the one sent on September 20; this time, the letter noted that the claim was accompanied by a cost bond. Castro did not submit any additional documents to the DEA in response to this letter. Instead, over eighteen months later, Castro filed a motion to dismiss the Third Superseding Indictment against him in the district court. Castro contended that the prior forfeiture of the currency constituted punishment and therefore the criminal prosecution would violate the Double Jeopardy Clause. The district court denied Castro's motion, concluding that because his claim of ownership and bond were filed late and he failed to file a petition for remission or mitigation, the government merely forfeited abandoned property and, consequently, the administrative forfeiture did not punish Castro for the purpose of double jeopardy.

On appeal, Castro contends that his claim was late by one day only because he received the Notice of Seizure on the day before the deadline for filing a claim. Castro further contends that such a technical defect in his claim should have prevented the government from forfeiting the currency without a judicial hearing. Accordingly, Castro urges this court to find that the administrative forfeiture punished him and that the criminal prosecution would violate the Double Jeopardy Clause.

## DISCUSSION

### I. STANDARD OF REVIEW

■ The district court's denial of a motion to dismiss an indictment on double jeopardy grounds is reviewed *de novo*. *United States v. Chick*, 61 F.3d 682, 685 (9th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 1416, — L.Ed.2d — (1996).

### II. THE DISTRICT COURT DID NOT ERR IN DENYING CASTRO'S MOTION TO DISMISS BECAUSE JEOPARDY DID NOT ATTACH WHEN THE $11,890 WAS ADMINISTRATIVELY FORFEITED [2]

■ Castro may not assert double jeopardy without first establishing that original jeopardy attached in the prior administrative forfeiture of the $11,890. *See Serfass v. United States*, 420 U.S. 377, 389, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). We have held that the administrative forfeiture of unclaimed property does not constitute punishment for double jeopardy purposes. *United States v. Cretacci*, 62 F.3d 307, 310–11 (9th Cir.1995). In *Cretacci*, the government administratively forfeited the defendant's property after he failed to file a claim of ownership and cost bond, despite having received the Notice of Seizure, which informed him that he must file a claim and a cost bond to

---

2. Castro contends both in district court and on appeal that original jeopardy attached when the government forfeited the $11,890 in currency and two cars (a 1990 Ford tow truck and a 1987 Chevrolet Impala). However, DEA records do not show any forfeiture of the tow truck and Castro has not provided any evidence of such a forfeiture. Furthermore, the Impala was forfeited by state authorities and cannot be the basis of a double jeopardy violation. *See, e.g., United States v. Koon*, 34 F.3d 1416, 1438 (9th Cir.1994)

(no double jeopardy where two separate sovereigns impose punishment), *cert. granted in part on other grounds*, — U.S. —, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995). In any event, Castro did not file a claim of ownership to these vehicles and jeopardy does not attach where a defendant fails to assert an ownership interest prior to forfeiture. *United States v. Cretacci*, 62 F.3d 307, 311 (9th Cir.1995). Accordingly, this appeal concerns only the forfeiture of the currency.

contest the forfeiture. We concluded that "an owner who receives notice of the intended forfeiture and fails to claim an ownership interest in the property has effectively abandoned it," and the forfeiture of abandoned property does not implicate any rights protected by the Double Jeopardy Clause. *Id.* This appeal raises a related issue: whether a claim of ownership that does not comply with statutory and regulatory requirements renders the property abandoned and the forfeiture action uncontested.[3] For the following reasons, we hold that Castro's untimely claim and cost bond constitute an abandonment of the property as a matter of law.

 To begin, we find that the DEA provided sufficient notice to Castro. Due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Here, the DEA reasonably calculated that Castro would receive the Notice of Seizure in time for him to contest the forfeiture by September 15, 1993 because the Notice arrived at MDC on August 25, 1993, which was the first day of publication of the Notice. The DEA is not required to do any more under these circumstances.[4] Thus, as stated above, the issue becomes whether, having received sufficient notice of the forfeiture, Castro adequately claimed ownership interest in the property such that the currency cannot be deemed abandoned.

 Castro contends that his untimely claim distinguishes this case from *Cretacci,* where the defendant failed to file any claim to the forfeited property. Although *Cretacci* is distinguishable, the reasoning underlying that decision applies in full force here.[5] Like the defendant in *Cretacci,* Castro effectively chose not to contest the forfeiture by not complying with the statutory and regulatory requirements for asserting his interest in the property. Castro's failure to submit a claim *and* give a cost bond within twenty days from the first day of publication of the Notice of Seizure, as required by 19 U.S.C. § 1608 and 21 C.F.R. § 1316.76, is dispositive. Merely asserting that the property belonged to him, without complying with the requirements for filing a claim of ownership, is not legally sufficient to terminate the administrative forfeiture proceeding and mandate a judicial adjudication of the forfeiture. *See* 19 U.S.C. § 1608, 21 C.F.R. § 1316.78 (property cannot be administratively forfeited upon submission of a claim and cost bond).

Nonetheless, Castro contends that the government was aware of his untimely claim at the time it forfeited the currency and that it could not have reasonably believed that he did not intend to assert an interest in the currency. We reject this argument. As stated above, only the timely filing of a claim and cost bond bars the government from administratively forfeiting property. *See* 19 U.S.C. § 1608, 21 C.F.R. § 1316.78. An intent to assert an ownership interest alone does not require a judicial adjudication of the forfeiture. There is no authority for finding that anything less than a legally sufficient claim and bond precludes the government from determining that the property is aban-

---

3. The only published opinion to date that addresses the issue of an insufficient claim due to the absence of the cost bond is *United States v. Muth,* 896 F.Supp. 196, 198 (D.Or.1995) (holding that jeopardy did not attach where the property was administratively forfeited under 21 U.S.C. § 881(a)(6) because a defendant who files a *timely* claim *without* the requisite cost bond "is in the same position as someone who failed to file a claim at all").

4. There is no statutory or regulatory requirement regarding the timing of the notice other than the provisions pertaining to publication. *See* 19 U.S.C. § 1607(a), 21 C.F.R. § 1316.75. The DEA's compliance with the publication provision is not disputed.

5. *Cf. Ragin v. United States,* 893 F.Supp. 570, 574 (W.D.N.C.1995) (defendant was not punished and jeopardy did not attach after withdrawal of a timely claim of ownership) (citing *United States v. Torres,* 28 F.3d 1463 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994)). In *Torres,* the Seventh Circuit held that jeopardy did not attach in an administrative forfeiture because the defendant did not participate in the proceeding and was not subject to any determination of guilt. 28 F.3d at 1465. Because *Cretacci* controls, we base our decision solely on its abandonment rationale.

doned as a matter of law and the forfeiture is uncontested.[6] Accordingly, absent a legally sufficient claim and cost bond, the DEA was obligated to forfeit administratively the property. 19 U.S.C. § 1609(a), 21 C.F.R. § 1316.77(a) (DEA "shall declare the property forfeited" where no claim and cost bond are filed within twenty days of the first day of publication of the Notice of Seizure).

The instant appeal is similar to *United States v. Washington,* 69 F.3d 401 (9th Cir. 1995). In *Washington,* the defendant, relying on his counsel's advice, decided against filing a claim and cost bond or a petition for remission/mitigation. *Id.* at 404. We held that the defendant's reliance on his attorney's advice indicated that he weighed the worth of asserting a claim against the risks of pursuing the claim in deciding against filing a claim of ownership. Absent such a claim, *Cretacci* controlled the disposition of that case. *Id.* Here, counsel incorrectly advised Castro that an untimely claim would be accepted, and Castro did not contest the forfeiture in the manner required by law. As a result, the property was properly deemed abandoned, the administrative forfeiture was uncontested, and jeopardy did not attach. *See Cretacci,* 62 F.3d at 310–11.

Counsel further advised Castro not to file a petition for remission or mitigation, pursuant to 19 U.S.C. § 1613 and 21 C.F.R. § 1316.79, because he believed that, by filing a petition for remission or mitigation, Castro may surrender whatever rights he might have down the line. Although Castro's failure to file a petition for remission or mitigation does not bear on whether he properly asserted a claim of ownership at the outset, it reveals that, even when he had the opportunity to challenge properly the forfeiture and assert his interest, he weighed the worth of

asserting a claim against any risks associated with doing so and ultimately decided not to assert a claim of ownership. Castro's desire for a judicial adjudication of the forfeiture rather than an administrative ruling on a petition for remission or mitigation does not warrant excusing him from asserting an interest in the property in the manner required by the forfeiture statute and regulations.

In sum, the administrative forfeiture of the $11,890 was appropriate because the forfeiture was uncontested, in light of the absence of any timely claim and cost bond. Accordingly, under *Cretacci,* the currency was abandoned property, the forfeiture did not punish Castro, and original jeopardy did not attach.

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Castro's motion to dismiss the Third Superseding Indictment.

---

**6.** Relying on the testimony of Steven Bushendorf, former manager of the DEA's Asset Removal Group in Los Angeles, Castro argues that the DEA's policy allows claimants an opportunity to perfect any defects in their claims, such as claims not accompanied by a cost bond. This testimony is irrelevant to determining whether Castro asserted a claim of ownership, consistent with statutory and regulatory requirements: the DEA is not *required* to give a claimant an oppor-

tunity to perfect a defective claim of ownership. *See* 21 C.F.R. § 1316.76(a) (the DEA may give the claimant a reasonable time to correct any defect in the claim or cost bond, if it determines that the documents are not in satisfactory condition).