**UNITED STATES of America**

v.

**Ronald WADE**

**No. 6:95CR140ORL22JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 5, 2002.

Daniel N. Brodersen, Miller, South & Milhausen, P.A., Winter Park, FL, Charles Michael Greene, Law Office of Charles M. Greene, P.A., Orlando, FL, for Ronald Wade.

Roberta Kohn, Shapiro & Fishman, Tampa, FL, for Alliance Mortgage Co.

Anita M. Cream, U.S. Attorney's Office, Tampa, FL, for U.S.

#### ORDER

CONWAY, District Judge.

This cause is before the Court on Defendant Ronald Wade's Renewed Motion to Compel the Return of Seized Property (Doc. No. 391) filed on January 15, 2002.

The United States Magistrate Judge has submitted a report recommending that the Motion be denied.

After an independent *de novo* review of the record in this matter, including the objections filed by the Defendant (Doc.

No. 435), the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendations.

Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation filed September 10, 2002 (Doc. No. 428) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. Ronald Wade's Renewed Motion to Compel the Return of Seized Property (Doc. No. 391) is DENIED.

3. This Court's Order entered August 8, 2001 granting Wade's Motion for Return of Seized Property as unopposed (Doc. No. 366) is hereby VACATED.

### REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration at hearing on February 27, 2002 on the following motion:

MOTION: DEFENDANT RONALD WADE'S RENEWED MOTION TO COMPEL THE RETURN OF SEIZED PROPERTY (Docket No. 391)

FILED:   January 15, 2002

**THEREON** it is **RECOMMENDED** that the motion be **DENIED.**

Defendant Ronald Wade ("Wade") moves to compel the return of funds seized from him and administratively forfeited by the Drug Enforcement Administration ("the DEA"). Wade makes two arguments. First, Wade claims that the DEA illegally confiscated the funds during a stop and search of his vehicle. Second, Wade claims that his multiple transfers between correctional facilities denied him a meaningful opportunity to object to the DEA's administrative forfeiture. Because this Court lacks jurisdiction to review the merits of the administrative forfeiture, and because Wade received adequate notice of the forfeiture proceedings, Wade's motion should be **DENIED.**

## I. BACKGROUND

### A. Criminal Proceedings

On June 27, 1995, pursuant to the DEA's request, the Florida Highway Patrol stopped Wade while Wade traveled southbound on Interstate 95 toward Miami, Florida. Prior to the stop, the DEA received information from a wiretap that Wade planned to travel to Miami, Florida to purchase cocaine. The DEA also believed that Wade transported money for that purpose. With Wade's consent, the Florida Highway Patrol Trooper, Ronald Roberts, conduced a search of the vehicle. Trooper Roberts found a bag containing $24,990.11 in U.S. currency. Trooper Roberts also found a briefcase, but he did not open it.

At some point during the search, another trooper arrived. Wade was placed in the back of that trooper's car. Thereafter, DEA Special Agent Russ Wise arrived. Agent Wise opened the briefcase and discovered additional cash—approximately $1,000. Agent Wise then advised Wade of his *Miranda* rights. Wade did not respond. Agent Wise asked Wade some questions, and then asked if the money in the vehicle belonged to him. Wade responded that only the money in the briefcase belonged to him—not the $24,990.11 found in the bag. Wade then signed a release form concerning the $24,990.11. Docket No 145 at 13. For most of this time, Wade was not at liberty to leave. Trooper Roberts ultimately issued Wade a traffic citation, and released Wade.

Approximately a month later, on July 21, 1995, the Grand Jury charged defendant Ronald Wade, co-defendant Dentze Denise Abner, and another person with conspiracy to possess and to distribute cocaine base and cocaine hydrochloride. Docket No. 1. The indictment also included forfeiture allegations pursuant to 21 U.S.C. § 853. On July 21, 1995, the DEA arrest-

ed Wade. Also on that date, the DEA conducted a search of 623 Marion Street, Daytona Beach, Florida—a residence shared by defendant Wade and co-defendant Dentze Abner. During the search, the DEA seized $2,993, along with drugs and drug paraphernalia.

On December 15, 1995, Wade moved to suppress all evidence seized during the search of Wade's vehicle and residence. Docket No. 132. After holding a full evidentiary hearing, the Honorable Anne C. Conway denied Wade's motion to suppress, finding the stop and search lawful. Docket No. 145. Judge Conway further found no violation of Wade's *Miranda* rights. All of Wade's statements to Agent Wise were held to be admissible. Docket No. 145 at 13—15.

Wade's criminal trial took place from January 16, 1996 through January 18, 1996. At trial, Agent Wise testified about his conversations with Wade on June 27, 1995. *See* Trial transcript at 89—91. During his testimony, the government introduced into evidence the waiver form Wade had signed disclaiming any interest in the $24,990.11.[1] Docket No. 398, Government Exhibit ("GX") 1.

After a jury trial, the jury found Wade guilty as charged. *See* Docket No. 125. On April 5, 1996, Judge Conway sentenced Wade to life in prison. Docket No. 202. The United States Court of Appeals for the Eleventh Circuit affirmed Wade's conviction and sentence on February 10, 1998, and the United States Supreme Court denied *certiorari* on October 5, 1998. *United*

*States v. Wade*, 136 F.3d 1330 (11th Cir.), *cert. denied* 525 U.S. 907, 119 S.Ct. 244, 142 L.Ed.2d 201 (1998).

**B. Administrative Forfeitures**

Meanwhile, under the authority of 21 U.S.C. § 881, the DEA initiated forfeiture proceedings against the currency seized— the $24,990.11 the $2,993—following the administrative procedure in 19 U.S.C. § 1607.

**1. Forfeiture of $24,990.11**

Even though Wade had disclaimed any interest in the $24,990.11, the DEA provided Wade with written notice of the administrative forfeiture of the $24,990.11 on July 31, 1995 by sending notice by certified mail to Wade's Daytona Beach address. Docket No. 396, Declaration of Vicki L. Rashid, Acting Forfeiture Counsel of the DEA ("Rashid's Aff.") at 2, Ex. 1. The DEA also published notice of the forfeiture in *USA Today* on three successive Wednesdays: August 9, 16, and 23, 1995. Rashid's Aff. at 2—3, Ex. 3. The direct written notice and published notices informed Wade of the procedure and time limits for filing a claim. Rashid's Aff. at 3, Ex. 1 and 3. Specifically, the notices explained that a claimant has the option of filing a claim and cost bond, or of filing an affidavit of indigency in lieu of the cost bond in order to contest the administrative forfeiture action. The published notices also stated that the deadline to file a claim was August 29, 1995—within twenty days

---

1. The waiver form, completed and signed by Wade, states, in pertinent part:

    That I, Ronald Wade, hereby disclaim any and all interest I may have in the [illegible possibly "enumerated" or "estimated"] amount of United States Currency. I further waive the right to plead or answer in any forfeiture action concerning the above referenced currency, seized from me, on this 27[sic] day of June, 1995. I herein

waive and disclaim, any and all interests in the currency sought to be forfeited, and agree that this cause may be tried and judgment entered without further notice to me.

    The undersigned [Ronald Wade] hereby declares that he/she has completely read or has had the above explained to him/her and fully understands and voluntarily accepts the terms contained herein.

GX 1.

from the first date of publication, August 9, 1995. Rashid's Aff. at 3, Ex. 1 and 3. In addition, the published and mailed notices explained the option of filing a petition for remission or mitigation with the DEA. *Id.*

On October 5, 1995, the DEA sent Wade a second direct written notice via certified mail to the Seminole County Jail. Rashid's Aff. at 3, Ex. 4. The notice was returned as undeliverable. *Id.*, Ex. 5. On March 4, 1996, the DEA sent a third direct written notice directly to Wade via certified mail to the Osceola County Jail. Rashid's Aff. at 3, Ex. 6. On March 8, 1996, the Osceola County Jail accepted delivery of the notice. Docket No. 396, Rashid Aff. at 3, Ex. 7. The third notice extended the deadline for Wade to file a claim by twenty days. Wade responded to the third (March 4, 1996) notice sent to the Osceola County Jail, stating that he was unable to make bond. Docket No. 399, Defendant's Exhibit ("DX") 2.

On March 14, 1996, the DEA received Wade's response. Docket No. 396, Rashid Aff. 4, Ex 8. The DEA found Wade's response to be a defective claim for the seized property because: 1.) the claim did not include a bond or affidavit of indigency; and 2.) the claim was not executed and sworn to by the person alleging interest in the property, and no documentation was submitted authorizing an attorney to sign on behalf of that person. Docket No. 396, Rashid Aff. at 4, Ex. 9. On March 26, 1996, the DEA sent Wade via certified mail a letter rejecting his claim. *Id.* The DEA identified the claim's statutory defect, and provided Wade with an additional twenty days to correct the defect. DX 3, Docket No. 396, Rashid Aff. at 4, Ex. 9. The DEA also provided Wade with an "Affidavit to Proceed In Forma Pauperis in Lieu of Cost Bond." DX 3; Docket No. 396, Rashid Aff. at 4, Ex. 9.

On April 25, 1996, the DEA received a letter from Wade. DX4; Docket No. 396,

Rashid Aff. at 4. Ex. 11. Wade stated that he had moved facilities in early April, that he was not able to complete his *in forma pauperis* affidavit, that he needed another set of claim forms, and that his new jail address was "Ronald Wade, SR., Lake County Jail, Reg. No. DIA–9–18691, 551 West Main Street, Tavares, Florida 32778." DX 4; Docket No. 396, Rashid Aff. at 4, Ex. 11.

On May 2, 1996, the DEA sent the documents that Wade had requested to his new jail address via certified mail, return receipt requested. The DEA gave Wade an additional twenty days to file a proper claim. Docket No. 396, Rashid Aff. at 4, Ex. 12. Wade claims, without supporting documentation, that on May 10, 1996, he was moved from Lake County Jail to Tallahassee. Nevertheless, on May 13, 1996, Lake County Jail accepted delivery of the DEA's May 2, 1996 correspondence. Docket No. 396, Rashid Aff. at 4, Ex. 13. The DEA's letter of May 2, 1996 gave Wade until *June 3, 1996*—twenty days from the receipt date of May 13, 1996—in which to submit a claim of ownership to the seized property. Wade failed to file a proper and timely claim or to request an extension by June 3, 1996. On June 18, 1996, no proper claim having been filed, the DEA declared forfeited the $24,990.11 pursuant to 19 U.S.C. § 1609. DX 6; Docket No. 396, Rashid Aff. at 4—5, Ex. 14.

On July 1, 1996, the DEA received correspondence from Wade dated June 24, 1996. Docket No. 396, Rashid Aff. at 4, Ex. 15. The correspondence included an "Application to Proceed in Forma Pauperis, Supporting Documentation and Order." The correspondence also included a "Civil Rights Complaint with a Jury Demand," dated June 13, 1996. Docket No. 396, Rashid Aff. at 4, Ex. 15. In the complaint, Wade sought the return of the seized $24,

990.11, and challenged the constitutionality of the seizure.[2] *Id.* Wade made no claim for the $2,993 seized from his Daytona Beach residence in his complaint. On July 30, 1996, treating the correspondence as a claim for seized property, the DEA rejected Wade's claim as untimely. Docket No. 396, Rashid Aff. at 5.

### 2. Forfeiture of $2,993

On August 28, 1995, the DEA provided Wade with notice of the second administrative forfeiture (of the $2,993) via certified mail to both his Daytona Beach residence and the Seminole County Jail, Polk Correctional Facilities, 211 Busch Blvd, Sanford, Florida. Docket No. 396, Rashid Aff. at 6, Ex. 20 and 22. Also on August 28, 1995, the DEA sent written notice via certified mail to Dentze Abner at 623 Marion Street, *Sandford* [sic], Florida 32773 because Abner also resided at 623 Marion Street at the time of the search and seizure of the $2,993.[3] Docket No. 396, Rash-

id Aff. at 6, Ex. 24. That notice was returned to the DEA with the notation "Returned to Sender. Endorsement—no such street." Docket No. 396, Rashid Aff. at 7, Ex. 25.

On September 1, 1995, the Seminole County Jail accepted delivery of the August 28, 1995 notice on behalf of Wade. Docket No. 396, Rashid Aff. at 6, Ex. 23. Notice of the forfeiture also was published in *USA Today* for three successive Wednesdays: September 6, 13, and 20, 1995. Docket No. 396, Rashid Aff. at 7, Ex. 26. These publications, like those of the first forfeiture, explained the time limits and procedure for filing a claim. *Id.*

On December 4, 1995, the DEA resent notice of the forfeiture to Abner at the Seminole County Jail. The notice was returned as undeliverable. Docket No. 396, Rashid Aff. at 6, Ex. 27. On February 27, 1996, the DEA also resent notice of the forfeiture to Abner at 623 Marion Street, Daytona Beach, Florida. *Id.* at 7—8, Ex.

**2.** Wade filed the aforementioned complaint [Case No. 2:96–14165–Civ–Davis] in the Southern District of Florida on July 9, 1996. Docket No. 396, Rashid Aff. at 5, Ex. 18. At the February 27, 2002 hearing, the parties stated that Wade's complaint was dismissed due to Wade's failure to pay filing fees. The parties further stated that there had been no adjudication on the merits of Wade's claim. The parties are mistaken. It was the appeal, not the underlying case, that was dismissed for failure to pay filing fees. *See* Docket No. 31, Case No. 2:96–14165–Civ–Davis. The Court has taken judicial notice of Wade's Southern District of Florida case. *See Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir.1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases."). Contrary to the parties' understanding, on September 3, 1997, the Honorable Edward B. Davis addressed and rejected, on the merits, the exact issue before us: whether Wade's multiple transfers between correctional facilities denied him a meaningful opportunity to object to the DEA's summary administrative

forfeiture. Docket No. 28 at 6, Case No. 96–141656–Civ–Davis. Judge Davis found that the notice provided by the DEA "was reasonably calculated, under all circumstances, to appraise Wade of the pendency of the summary administrative forfeiture proceedings and afford him an opportunity to present his objections." Docket No. 28 at 7, Case No. 2:96–14165–Civ–Davis. After finding that Wade had received constitutionally adequate notice, Judge Davis granted the government's motion to dismiss, or alternative motion for summary judgment. *Id.* at 7. Although the parties have not briefed this issue, it appears from the record that the doctrine of res judicata bars Wade's present claim to the seized $24,990.11. *See Christo v. Padgett*, 223 F.3d 1324, 1338 n. 46 (11th Cir.2000) (res judicata attaches when the same cause of action is litigated between the same parties in consecutive cases).

**3.** This summary involves facts relating to Dentze Abner because they are relevant to Wade's pending claim to the same $2,993 that the DEA already paid to Abner. Abner has no pending claim.

29. An individual at that address accepted delivery of that notice on March 4, 1996. Docket No. 396, Rashid Aff. at 8, Ex. 30.

On March 25, 1996, the DEA received a defective claim from Abner in which she asked for copies of the forms necessary to submit a proper claim. Docket No. 396, Rashid Aff. at 8, Ex. 31. The following day, on March 26, 1996, the DEA notified Abner of the defect, provided Abner with copies of the appropriate forms, and provided Abner with an additional twenty days to file a proper claim. Docket No. 396, Rashid Aff. at 8, Ex. 31. On April 18, 1996, the DEA received Abner's corrected claim. *Id.* at 8, Ex. 33. On April 30, 1996, the DEA referred Abner's claim to the United States Attorney for the Middle District of Florida, and notified Abner of the referral. Docket No. 396, Rashid Aff. at 8, Ex. 34. After the United States Attorney's Office declined to commence a judicial forfeiture, the DEA instructed the Marshals Service to return the $2,993 to Abner. Wade had made no claims, so Abner was the only claimant. On November 19, 1999, the United States Marshals Service returned the $2,993 to Abner. Abner filed a Hold Harmless Agreement acknowledging receipt of the funds. Docket No. 396, Rashid Aff. at 9, Ex. 39.

### C. Wade's Motions for Return of Seized Property

On July 5, 2001, defendant Ronald Wade filed a *pro se* motion for return of seized property (both the $24,990.11 that the DEA held, and the $2,993 that the DEA had returned to Abner). Docket No. 360. On July 10, 2001, the district court ordered the government to respond to Wade's motion by July 30, 2001. Docket No. 362. No response having been filed by the government, the Honorable Anne C. Conway granted Wade's motion on August 8, 2001 as unopposed. Docket No. 366. On September 4, 2001, the United States moved for reconsideration of the order to return the money to Wade. Rather than arguing a mistake in failing to oppose Wade's motion, the government sought reconsideration on the ground that the DEA, and not the United States Attorney's Office, is the proper "party" in the litigation concerning the seized funds. Docket No. 369 at 3. On September 24, 2001, Wade filed a motion to compel the return of seized properties. Docket No. 370. On October 10, 2001, Judge Conway referred[4] both matters to the Honorable James G. Glazebrook: 1.) the government's motion for reconsideration; and 2.) Wade's motion to compel the return of property. Docket No. 371.

Judge Glazebrook heard oral argument on October 30, 2001 as to whether the government should be permitted to oppose Wade's claim to the seized $24,990.11 and $2,993, given the government's earlier default. Judge Glazebrook rejected the government's argument that the proper "party" in this case is the DEA, not the United States Attorney's Office. The United States Department of Justice, through its various United States Attorneys, represents the agencies of the United States, including the DEA, a component of the Department of Justice.

Nevertheless, Judge Glazebrook found reconsideration warranted because the United States did not intentionally ignore the district court's order directing the government to respond to Wade's motion for return of property. The order was delivered to Paul Byron—the Assistant United States Attorney who had prosecuted the criminal case. Byron discussed the motion and order with Anita Cream—the Assis-

---

4. Judge Conway referred these motions to the magistrate judge "for the purpose of conducting a hearing, and for ruling, or if necessary, issuance of a Report and Recommendation." Docket No. 371.

tant United States Attorney who is now the Chief of Asset Forfeiture for the Middle District of Florida. After reviewing the forfeiture file, Cream informed Byron that the only property forfeited by the government was real estate, and that the real estate forfeiture had been vacated because forfeiture language had not been included in the judgment. Cream had no information about the cash seizures because those funds had not been forfeited in the criminal case. Apparently, Byron misunderstood, believing that all seized property had been returned. Believing there was no dispute, Byron did not object to Wade's motion.

The government's failure to oppose the motion for return of property was the result of an innocent mistake. There was no bad faith shown by government's counsel. The Court's order was not "deliberately ignored" as Wade alleged. Accordingly, Judge Glazebrook granted the government's motion only as to reconsideration, but reserved for Judge Conway (after further briefing and oral argument before the magistrate judge, and after consideration of the report and recommendation and any objections) the determination as to whether her prior order should stand on reconsideration. *See* October 31, 2001 Endorsed Order; *see also* Minutes Entry at Docket No. 376.

On October 31, 2001, the Court appointed Charles Greene, Esq. to represent Wade pursuant to the Criminal Justice Act in the forfeiture proceedings. Docket No. 377. Having appointed counsel, the Court denied Wade's *pro se* motion [Docket No. 370] without prejudice to refile by Wade's counsel. *See* October 31, 2001 Endorsed Order.

Noting that his counsel had not refiled a motion, on November 29, 2001, Wade filed another *pro se* motion to compel return of the seized property. Docket No. 382. On December 5, 2001, Judge Glazebrook held another hearing on Wade's motion for return of property. Docket No. 383. Attorney Greene represented Wade at the hearing. At the December 5 hearing, the Court proceeded to reconsider the substance of Wade's claim for the return of property. Greene, who had recently been appointed, made an oral request for an opportunity to brief the issues and for additional time to prepare for an evidentiary hearing. The Court granted Greene's request. Docket No. 383. The Court ordered Greene to file, on behalf of Wade, a renewed or amended motion for return of seized property by January 15, 2002. The Court denied Wade's *pro se* motion to compel [Docket No. 382].

On January 15, 2002, Greene filed a Renewed Motion to Compel the Return of Seized Property. Docket No. 391. In his renewed motion, Wade did not argue the merits of his claim to the money as ordered. Rather, Wade argued that the government had not shown good cause for reconsideration—a matter long ago resolved by the Court on October 30, 2001. On February 8, 2002, the government filed a memorandum opposing on the merits Wade's renewed motion for return of property. Docket No. 395.

On February 27, 2002, the Court held a full hearing on Wade's renewed motion for return of seized property. *See* Docket No. 397. The undersigned permitted Wade to argue the merits of the motion at the hearing, even though Wade had not briefed the merits in his memorandum in opposition. At the end of the hearing, the Court allowed the parties until March 11, 2002 to submit any supplemental authority. On March 11, 2002, the government filed a notice of reliance on supplemental authorities. *See* Docket No. 400. Wade filed no supplemental memorandum.

## II. THE LAW ON ADMINISTRATIVE FORFEITURE

Congress authorizes the civil forfeiture of funds or property that are the proceeds of drug transactions.[5] 21 U.S.C. § 881(a)(6); *see Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1156 (2d Cir.1994). Two civil forfeiture procedures are available to the government: an administrative procedure under 21 C.F.R. § 1316.77, and a judicial procedure under 21 C.F.R. § 1316.78. For property worth $500,000 or less, the government (here the DEA) may pursue forfeiture by administrative rather than judicial means.[6] 19 U.S.C. § 1607(a)(1)(1999). Because the value of the monies seized from Wade and from Abner was less than $500,000, the DEA proceeded under the administrative forfeiture procedure.

### A. Sufficiency of Notice

After a seizure, the administrative forfeiture procedure begins when the DEA publishes notice of the seizure and intent to forfeit the property. *See* 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75(a). Section 1316.75(a) requires that publication be accomplished by publishing the notice and intent to forfeit "once a week for at least 2 successive week in a newspaper of general circulation in the district in which the processing for forfeiture is brought." In addition to notice by publication, the DEA must also send "[w]ritten notice of seizure together with the information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a). Thus, two forms of notice are required: 1.) notice by way of publication, and 2.) written notice to a party having an interest in the property. *See* 19 U.S.C. § 1607(a).

The standard for adequate notice under the Due Process Clause [7] is well established: notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

---

**5.** 21 U.S.C. §§ 881(a)(6) provides in pertinent part:

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

\*    \*    \*    \*    \*    \*

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter....

**6.** If the item seized is worth more than $500,000, the forfeiture action is prosecuted from the outset by the appropriate United States Attorney in district court. 19 U.S.C. § 1610.

**7.** The Due Process Clause of the Fifth Amendment prohibits the United States from depriving any person of property without

"due process of law." Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard." *United States v. James Daniel Good Real Property,* 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). Actions seeking to correct a procedurally deficient forfeiture are "subject to the general six-year statute of limitations for suits brought against the United States found in 28 U.S.C. § 2401." *Boero v. DEA,* 111 F.3d 301, 305 n. 5 (2d Cir.1997). Section 2401 provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action *first accrues.*" 28 U.S.C. § 2401(a) (emphasis added). The United States Court of Appeals for the Second Circuit has held that a claimant's cause of action *accrues* when he discovers that his property has been forfeited without sufficient notice. *Polanco v. DEA,* 158 F.3d 647, 654 (2d Cir.1998). The government does not argue that Wade's claims are barred by the statute of limitations. Wade filed his first motion for return of property on July 5, 2001—less than six years after the July 18, 1996 forfeiture of the seized $24,990.11.

the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It is also settled that the *Mullane* standard applies to notice given pursuant to administrative forfeiture proceedings. *Dusenbery v. United States*, 534 U.S. 161, 122 S.Ct. 694, 699, 151 L.Ed.2d 597 (2002).

On January 8, 2002, the United States Supreme Court held that the Due Process Clause does not require that the government provide claimants with actual notice. *See Dusenbery*, 534 U.S. at ——, 122 S.Ct. at 701. In *Dusenbery*, the Court found that the FBI satisfied statutory requirements by sending notice to claimant's place of incarceration, which had set procedures for delivering mail. *Dusenbery*, 534 U.S. at ——, 122 S.Ct. at 701—02. The *Dusenbery* claimant argued that, because he was housed in a federal prison at the time of the forfeiture, the FBI should have made arrangements with the Bureau of Prisons to assure the delivery of the notice in question to him. 534 U.S. at ——, 122 S.Ct. at 702. The Supreme Court rejected claimant's argument. The Court explained that the Due Process Clause does not require such heroic efforts by the government; it requires only that the government's effort be "reasonably calculated" to apprise a party of the pendency of the action. 122 S.Ct. at 702.

### B. Challenging Forfeiture

Once the administrative forfeiture process is commenced, a claimant has twenty days from the date of first publication of notice to contest the forfeiture by filing a claim and a cost bond. *See* 19 U.S.C. §§ 1607, 1608; 28 C.F.R. §§ 9.1—9.5; 21 C.F.R. § 1316.75—76. If the claimant files a claim and bond, the administrative forfeiture process halts, and forfeiture proceedings continue as a judicial forfeiture proceeding in federal district court. *See* 19 U.S.C. § 1609; 21 C.F.R. §§ 1316.76(b), 1316.78. If no claim of ownership is filed within twenty days of the publication of notice of the seizure, however, administrative forfeiture occurs by default.[8] *See* 19 U.S.C. §§ 1608, 1609. Thereafter, a claimant's only recourse is to petition the DEA for remission. *See* 28 C.F.R. § 9.3. However, remission "is purely a matter of administrative grace." *Litzenberger v. United States*, 89 F.3d 818, 820 (Fed.Cir.1996).

Only the timely filing of a claim and cost bond bars the government from administratively forfeiting property. *See* 19 U.S.C. § 1608; 21 C.F.R. § 1316.78. As the United States Court of Appeals for the Ninth Circuit explained:

> An intent to assert an ownership interest alone does not require judicial adjudication of the forfeiture. There is no authority for finding that anything less than a legally sufficient claim and bond precludes the government from determining that the property is abandoned

---

8. On April 11, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202, in an effort to address due process concerns associated with federal civil forfeitures. H.R.Rep. No. 106–192, at 4–5 (1999). *See* Pub.L. No. 106–185 § 2, 114 Stat. at 202, 210 (stating that CAFRA § 2 is intended to apply to proceedings arising from "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense").

CAFRA is codified principally at 18 U.S.C. § 983.

CAFRA is not applicable to this case. It was not enacted by signature until April 25, 2000, and by its terms, CAFRA applies only to "any forfeiture proceeding commenced on or after the date that is 120 days after the date of the enactment of this Act." Pub.L. No. 106–185 § 21, 114 Stat. at 225. The commencement of forfeiture proceedings in this case occurred in June 27, 1995.

as a matter of law and the forfeiture is uncontested. Accordingly, absent a legally sufficient claim and cost bond, the DEA was obligated to forfeit administratively the property. 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77(a). *United States v. Castro,* 78 F.3d 453, 456–57 (9th Cir.1996). That the DEA may allow claimants an opportunity to perfect defects in their claim is irrelevant to determining whether an owner asserted a claim of ownership consistent with the statutory and regulatory requirements. *Id.* The DEA is not required to give a claimant an opportunity to perfect a defective claim of ownership. *See Castro,* 78 F.3d at 456–57 (citing 21 C.F.R. § 1316.76(a), which states that the DEA *may* give the claimant reasonable time to correct any defect in the claim or cost bond, if it determines that the documents are not in satisfactory condition).

Although the twenty-day period for filing a claim may seem short, claimants have only ten days to file claims in civil judicial forfeiture (pre-CAFRA) under Rule C(6) of the Supplemental Rule for Certain Admiralty and Maritime claims. It is not an abuse of discretion for a district court to require strict compliance with Rule C(6). *See United States v. One Dairy Farm,* 918 F.2d 310, 312 (1st Cir. 1990) (outlining cases and reasoning for strict compliance); *United States v. One 1979 Mercedes,* 779 F.2d 58 (11th Cir.1985) (requiring strict compliance is not an abuse of discretion).

## C. The Court's Limited Jurisdictional Review

Section 1609 (b) of 19 U.S.C. states that "[a] declaration of forfeiture under this section shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." Title then vests in the United States, as of the date of "the act for which the forfeiture was incurred." 19 U.S.C. § 1609(b).

■ The district courts have limited jurisdiction to review a claim of constitutionally deficient notice of forfeiture proceedings. *Arango v. United States Dep't of Treasury,* 115 F.3d 922, 925 (11th Cir. 1997). If the government agency forfeits property "accidentally, fraudulently, or improperly," the district court retains jurisdiction for the limited purpose of determining "whether the agency followed the property procedural safeguards when it declared property summarily forfeited." 115 F.3d at 925 (quoting *In re $67,470.00,* 901 F.2d 1540, 1545 (11th Cir.1990)). Other circuits agree that the federal courts retain this limited form of jurisdiction. *See, e.g., Weng v. United States,* 137 F.3d 709, 713 (2d Cir.1998); *Boero v. Drug Enforcement Admin.,* 111 F.3d 301, 305 (2d Cir.1997); *United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995); *United States v. Woodall,* 12 F.3d 791, 793 (8th Cir.1993).

The Eleventh Circuit has held that the district court may appropriately exercise its limited jurisdiction where the claimant's "failure to properly seek legal relief resulted from errors of procedure and form or the government's own misconduct." *In re Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00),* 901 F.2d 1540, 1545 (11th Cir.1990). The district court also may properly exercise its limited jurisdiction if the claimant alleges constitutional violations that do not "challenge the DEA's determination on the merits, but rather the nature of the adjudicatory process itself." *Id.* If a federal question is presented under these circumstances, federal court jurisdiction is properly invoked pursuant to 28 U.S.C. § 1331. *See id.*

Once the defendant fails to timely object, "a federal district court lacks jurisdiction to review the merits of any administrative decision, *unless the administrative*

*forfeiture is procedurally deficient."* United States v. Derenak, 27 F.Supp.2d 1300, 1304 (M.D.Fla.1998) (quoting *United States v. Millan–Colon,* 836 F.Supp. 994, 999 (S.D.N.Y.1993)) (emphasis added); *United States v. Castro,* 78 F.3d 453, 456 (9th Cir.1996) (filing of untimely claim and cost bond constitute an abandonment of the property as a matter of law); *United States v. Muth,* 896 F.Supp. 196, 198 (D.Or.1995) (defendant who files a timely claim without a cost bond "is in the same position as someone who failed to file a claim at all").

### III. ANALYSIS OF ADMINISTRATIVE FORFEITURES

#### A. Forfeiture of the Seized $24,990.11

This Court lacks jurisdiction to review the merits of the DEA's administrative forfeiture decisions. However, the Court does have limited jurisdiction to determine whether Wade received adequate notice of the forfeiture proceedings.[9] *United States v. Derenak,* 27 F.Supp.2d 1300 (M.D.Fla. 1998). Here, Rashid's declaration and Wade's concessions at the February 27, 2002 hearing show that the DEA provided Wade with notice of the forfeiture regarding the $24,990.11. The DEA gave Wade notice even though Wade signed a voluntary waiver disclaiming any interest in the $24,990.11. There is no question that Wade received actual written notice of the forfeiture. Similarly, there is no allegation that the DEA "accidentally or fraudulently" forfeited the property. Rather, the crux of Wade's argument is that his multiple transfers between correctional facilities denied him a meaningful opportunity to timely object to the administrative forfeiture. Wade claims that the administrative forfeiture was improper because he subsequently attempted, albeit late, to file a claim and affidavit of indigency with respect to the $24,990.11.[10]

As the Supreme Court of the United States held, the Due Process Clause does not require heroic efforts by the government. Here, the government first sent notice of the forfeiture on July 31, 1995 to Wade's Daytona Beach residence. *See* Docket No. 396, Rashid Aff. at 2, Ex. 1. That notice was followed on August 9, 16, and 23, 1995, by publications in the USA Today newspaper as required by 19 U.S.C. § 1607(a). On March 10, 1996, Wade received *actual* notice of forfeiture. That March 10 notice gave Wade an additional twenty days from receipt of the letter to file a claim. Rather than submit a proper claim, on March 11, 1996, Wade submitted a defective claim with no cost bond or affidavit to proceed *in forma pauperis* in lieu of cost bond. On March 26, 1996, the government provided Wade with an opportunity to cure its defective claim. The government also provided Wade with a copy of the *in forma pauperis* form and an additional twenty days to perfect a claim. Pursuant to Wade's request, on May 3, 1996 the government provided Wade with yet additional copies and another twenty days to perfect a claim.

---

9. Contrary to Wade's belief, res judicata does not bar the DEA's administrative forfeiture of the seized currency. The civil administrative forfeiture proceeding is not the same cause of action as Wade's criminal case. Moreover, in the criminal case, the United States did not seek to forfeit the cash at issue. Since there was no attempt to criminally forfeit those funds, res judicata does not apply. *Tilley v. United States,* 1998 WL 812395 (N.D.Tex. 1998). Moreover, "the remedies of criminal and civil forfeiture are mutually exclusive". The government may prosecute a civil forfeiture proceeding even though a prior criminal forfeiture proceeding has been unsuccessful. *United States v. Two Parcels of Real Property,* 80 F.Supp.2d 1298, 1304 (M.D.Ala.2000).

10. At the February 27, 2002 hearing, Wade conceded that he did not even attempt to file a claim with respect to the $2,993.

In short, Wade had *actual* notice of the forfeiture, together with the procedures to follow in filing a claim, no later than March 10, 1996. The government provided Wade with an opportunity to cure Wade's defective claim twice—on March 26, 1996 and on May 2, 1996—each time giving Wade additional time to perfect his claim, together with the necessary forms. On May 13, 1996, Lake County Jail accepted delivery of the DEA's May 2, 1996 notice. Pursuant to the Supreme Court's decision in *Dusenbery v. United States*, 534 U.S. 161, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002), the government satisfied Wade's due process rights to contest forfeiture of the $24,990.11. The notice provided by the DEA was reasonably calculated, under all the circumstances, to appraise Wade of the pendency of the administrative forfeiture proceedings and afford him an opportunity to present his objections. Wade simply failed to file a timely claim. As a result, this Court lacks jurisdiction to re-examine the merits of the forfeiture.

**B.  Forfeiture of the Seized $2,993**

It is undisputed that Wade received proper notice of the forfeiture regarding the $2,993. Indeed, on September 1, 1995, the Seminole County Jail accepted delivery of the notice. Wade did not file, or attempt to file, with the DEA a claim to the $2,993. Accordingly, this Court lacks jurisdiction to examine Wade's present claim to the $2,993. Indeed, the government returned the $2,993 to Dentze Abner. Upon this Court's inquiry at the February 27, 2002 hearing, Wade's counsel conceded that the district court had no jurisdiction over Wade's claim to the seized $2,993.

**IV.  *CONCLUSION***

For the forgoing reasons, it is

**RECOMMENDED** that the Court's August 8, 2001 order granting Wade's motion for return of seized property as unopposed [Docket No. 366] be **VACATED**. It is

**FURTHER RECOMMENDED** that the Wade's Renewed Motion for Return of Seized Property [Docket No. 391] be **DENIED**.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.